IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

BERNARDO MARTINEZ
REG. #39243-048                                                                                          PETITIONER

VS.                                              2:08CV00139 JTR

T.C. OUTLAW, Warden,
FCI, Forrest City, Arkansas                                                                    RESPONDENT

**MEMORANDUM AND ORDER**

**I.  Background**

Pending before the Court is a § 2241 habeas Petition filed by Petitioner, Bernardo Martinez, a federal prisoner who is incarcerated at the Federal Correctional Complex-Low Security, located in Forrest City, Arkansas ("FCC Forrest City").  (Docket entry #1).  Respondent has filed a Response (docket entry #6), to which Petitioner has filed a Reply.  (Document entry #13).  Thus, the issues are joined and ready for disposition.

Before addressing Petitioner's habeas claims, the Court will review the relevant procedural history of this case.  On April 21, 2006, the United States District of Nevada sentenced Petitioner to 60 months of imprisonment for possession with intent to distribute a controlled substance, methamphetamine, in violation of 21 U.S.C. § 841 (A)(1) and § 841 (B)(1)(B)(VII) (Docket entry #6, Attachment #1).  On August 8, 2006, Petitioner began serving his federal sentence at the Federal Correctional Institute, located in Sheridan, Oregon ("FCI Sheridan").  *Id.*

At 1:05 a.m. on January 16, 2007, two inmates at FCI Sheridan jumped the fence and ran in the direction of a car.  (Document entry #6, Attachment #4).  The individuals in the car never saw the inmates and they threw a bag over the fence to a staff member at FCI Sheridan, who was in plain

clothes. *Id.* The bag contained methamphetamine, marijuana, alcohol, a cell phone charger and earpiece, and chewing tobacco. (Document entry #6, Attachment #4). After the incident, all inmates were present in their units; however, footprints showed that one of the inmates who had escaped over the fence, ran back through blackberry bushes and jumped back over the fence on the other side of the housing unit. *Id.* The following day, staff received two anonymous notes identifying Petitioner as the inmate who had jumped the fence and then returned to the facility by way of the blackberry bushes. *Id.*

Staff at FCI Sheridan examined Petitioner, and discovered that he had multiple lacerations and cuts on his lower body. (Document entry #6, Attachment #4). Petitioner claimed that the injuries were from a fall on the recreation track. However, staff at FCI Sheridan found the injuries to be consistent with running through blackberry bushes and not a fall. *Id.* On January 18, 2007, Petitioner was overheard talking about the incident, almost getting caught, and bragging about his escape. *Id.*

Following an investigation, Petitioner was charged with three Bureau of Prisons violations: (1) "111A"Attempted Introduction of Narcotics or Marijuana; (2) "215A" Attempted Introduction of Alcohol; and (3) "331A"Attempted Introduction of Non-Hazardous Contraband. *Id*. Petitioner pled "not guilty" to all three charges and declined to provide a statement to investigators. *Id*.

On June 11, 2007, Petitioner signed and dated his Notice of Discipline Hearing. (Document entry #6, Attachment #4). In his Notice, Petitioner waived his right to have a full-time staff member represent him at the hearing and stated that he did not wish to call any witnesses on his behalf. *Id.*

At the disciplinary hearing held on July 7, 2007,[1] Petitioner provided the following statement::"I was never caught with any items. I never went over the fence. Those scratches were from the previous day. I fell on the track. I was never a runner." (Document entry #6, Attachment #4). The Disciplinary Hearing Officer (DHO) issued a decision finding Petitioner guilty of all three code violations. *Id.* The combined sanctions imposed by the DHO included: (1) the disallowance of 67 days of good conduct time; (2) 90 days disciplinary segregation; (3) one year loss of visiting privileges; (4) one year visiting restriction to immediate family only- consecutive to loss of visiting sanction; (5) recommend disciplinary transfer; (6) six months loss of phone privilege–suspended pending 180 days of clear conduct; (7) six months loss of commissary privileges. *Id.*

As a result of this disciplinary conviction, Petitioner was transferred to FCC Forrest City on September 4, 2007. (Document entry #6, Attachment #1).

On July 18, 2008, after exhausting his administrative appeals, Petitioner filed this federal habeas action. (Document entry #1). He requests that this Court vacate his disciplinary conviction, reinstate his good time credit, and transfer him back to FCI Sheridan based on the following due process violations: (1) denial of his right to call a witness during the disciplinary hearing; and (2) bias of the DHO officer. (Document entry #1, #13).

In his Response, Respondent argues that both of Petitioner's claims fail on the merits. (Document entry #6).

For the reasons explained below, the Court concludes that Petitioner's claims have no merit.

---

[1] An FBI investigation of the incident delayed the hearing beyond the prescribed five working days after the incident. (Document entry #6, Attachment #4). Petitioner was served with an "Advisement of Incident Report Delays" and made aware that his hearing would be delayed due to the pending FBI investigation. *Id.* The FBI did not release the incident report until June, 5, 2007. *Id.*

Thus, it must deny the Petition for a Writ of Habeas Corpus, and dismiss the case with prejudice.

## II.  Discussion

**A.       Standard of Review Governing Prison Disciplinary Hearings**

The deprivation of good time credits for a violation of a prison rule implicates liberty interests protected by the Due Process Clause. *See Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir.2002) (*citing Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974)). When a prison disciplinary hearing may result in the loss of good time credits, due process requires that an inmate receive: (1) advance written notice of the disciplinary charges at least 24 hours before the disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action. *See Hrbek v. Nix*, 12 F.3d 777, 780 (8th Cir.1993) (*citing Wolff*, 418 U.S. at 563-67); *Espinoza*, 283 F.3d at 951-52 (*citing Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). However, the decision of the prison disciplinary hearing officer is only required to be supported by "some evidence in the record." *Espinoza*, 283 F.3d at 951-52 (*citing Hill*, 472 U.S. at 454). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Where the record contains some evidence to support the decision of the DHO, the decision cannot be characterized as arbitrary. *Hill*, 472 U.S. at 457.

**B.       Analysis of Petitioner's Habeas Claims**

First, Petitioner asserts that he was denied the right to call a witness at his disciplinary hearing. (Document entry #1). To support this claim, Petitioner alleges that on the day of the hearing, he told the DHO that he intended to call a witness. *Id.* According to Petitioner, the DHO did not allow him to call or interview the witness and that the witness would have corroborated Petitioner's testimony that the injuries on his lower body were caused when he fell on the track while running. *Id.*

There is nothing in the record to support Petitioner's assertion that he made such a request, much less that it was denied by the DHO. In contrast, the record does contain a copy of the Notice of Hearing, signed by Petitioner, which reflects that he checked the box stating he "did not wish to have witnesses." (Document entry #6, Attachment #4).

Furthermore, even if the witness had been allowed to testify as Petitioner suggests, there is no indication that this testimony would have aided Petitioner's defense, or that the outcome of the proceeding would have been different. *See Howard v. United States*, 487 F.3d 808 (10th Cir.2007) (applying harmless error analysis to due process claim that prison officials denied requested witness testimony at hearing); *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir.1991) (constitutional violation in adjudicating prison disciplinary proceeding is subject to harmless error analysis).

Second, Petitioner makes the conclusory and factually-unsupported assertion that the DHO was biased against him. (Document entry #6, Attachment #1). Petitioner alleges that the BOP staff made ex parte presentations to the DHO prior to Petitioner appearing before the DHO. (Document entry #13). Disciplinary hearing officers are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *See* Piggie v. Cotton, 342 F.3d 660, 666 (8th Cir. 2003). "The nature of the prison disciplinary proceedings

compels the courts to give wide latitude to prison officials in the manner in which they conduct these proceedings." *Ivy v. Moore*, 31 F.3d 634, 635 (8th Cir.1994). For a petitioner to prevail on a claim that a DHO was biased, he must show that officer's conduct "gave [the officer] an interest adverse to [the inmate's] 'so direct, personal, and substantial as to give rise to a due-process violation.'" *Id.* .

Petitioner's general allegation that the DHO was biased is not sufficient to establish an interest adverse to Petitioner's interests "so direct, personal, and substantial" as to give rise to a due process violation. There is no evidence in the record that the DHO had ex part presentations with the BOP staff.  Similarly, there is no evidence that the DHO had any personal interest in the circumstances giving rise to the charges against Petitioner or in how those charges ultimately were resolved.

### III. Conclusion

The record in this case contains at least "some evidence" to support the disciplinary conviction, as required by the Court's holding in *Hill*.  Additionally, Petitioner was afforded the opportunity to explain his position and defend himself in accordance with the due process standards set forth by the Court in *Wolff*.

IT IS THEREFORE ORDERED THAT  the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (docket entry #1) be DENIED, and the case DISMISSED, WITH PREJUDICE.

Dated this 27th day of October, 2009.

_____
UNITED STATES MAGISTRATE JUDGE